IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL RYAN BURKE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-CV-04147-BCW |
| RECURRENT VENTURES, INC., et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants Andrew Milburn's and Recurrent Ventures, Inc.'s motions for summary judgment. (Docs. #77 and #79). The Court, being duly advised of the premises, grants said motions.

## BACKGROUND

On October 4, 2022, Plaintiff Michael Burke ("Burke"), a veteran of the United States Marine Corps, filed the instant case against Defendants Task & Purpose ("T&P"), Andrew Milburn ("Milburn"), Recurrent Ventures, Inc. ("Recurrent"), and The Mozart Group, LLC ("Mozart"). (Doc. #1). Recurrent is a digital media company which owns and operates the online magazine T&P. Mozart advertises that it trains, advises, and equips territorial defense units and provides humanitarian extraction and other services in Ukraine. Milburn, who was working as a journalist in Ukraine during the time of the alleged incident, is also a member of Mozart.

On January 9, 2023, Burke filed an amended complaint dismissing T&P as a party. (Doc. #12). On March 20, 2023, Mozart filed a motion to dismiss for lack of personal jurisdiction. (Doc. #22). On May 25, 2023, the Court granted Mozart's motion. (Doc. #35). Therefore, the remaining defendants in the instant case are Milburn and Recurrent (collectively "Defendants").

Burke asserts the following claims against Defendants: (1) defamation against Milburn and Recurrent (count 1); (2) intentional infliction of emotional distress ("IIED") against Milburn only (count 2); and (3) common law conspiracy to commit assault and battery against Milburn only (count 3). (Doc. #12).

## UNCONTROVERTED FACTS

On March 22, 2022, Burke traveled to Lviv, Ukraine with no job or specific plan except to be "useful" and look for opportunities to volunteer. (Doc. #86-1 at 27). While still in Ukraine, Burke met an American woman, L.P.[1] on the dating website Tinder. (Docs. #80, #89). Burke and L.P. subsequently met for dinner on March 25, 2022, and had a sexual encounter later that evening. Burke and L.P. spent additional nights together and had other sexual encounters until March 30, 2022.

On March 31, 2022, a journalist who writes under the name "Matthew Best" ("Best") received a message from someone associated with L.P. indicating that she was in distress and needed help. (Docs. #80, #89).[2] Best proceeded to meet up with L.P. in Lviv. On April 1, 2022, L.P. and Best traveled to Poland to report allegations of sexual assault against Burke to the Polish police. (Docs. #78, #88). On the same day, the Polish Regional Prosecutor's Office opened a criminal investigation regarding this matter.[3] Additionally, Best contacted the United States Embassy in Poland informing them of the allegations made by L.P. (Docs. #80, #89). The

---

[1] Due to the allegations of sexual assault, the ongoing investigation, and since this person is not a party to this case, the Court will only refer to her as L.P.

[2] The record is unclear as to who contacted Best regarding L.P.'s distress.

[3] Burke objected to this fact but did not deny it. Burke's objection was the document in which the fact is derived from is not admissible as: (1) it is not properly authenticated; and (2) contains hearsay upon hearsay. The Court overrules Burke's objections because the document, and its English translation, were properly authenticated pursuant to Fed R. Civ. P. 44(a)(2)(A). Secondly, the statements made in the document are not being used to prove the truth of the matter, only to show that an investigation was opened regarding the statements made in the document. Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 817 (8th Cir. 2010).

Ukrainian police in Lviv were also notified of L.P.'s allegations and went to Burke's hotel in Lviv to question him regarding the allegations; however, Burke was no longer at the hotel. (Doc. #86-19). Ukrainian police were actively looking for Burke and requested volunteers in Ukraine to assist in locating him.

During this time, Best provided details to Milburn about the allegations of sexual assault. (Doc. #86-3). Subsequently, Milburn wrote an article regarding L.P.'s allegations and submitted it to the website T&P, which is owned by Recurrent, for publication ("the Article"). (Doc. #86-25). On April 2, 2022, T&P published the Article written by Milburn entitled "Former US Marine accused of rape in Ukraine." The Article states the following:

> KYIV, Ukraine – A former U.S. Marine has been accused of raping and beating an American woman in Western Ukraine.
>
> [Burke][4], 38, is being sought by Ukrainian and Polish police after the woman reported the alleged assault to authorities. The woman, whose name is being withheld to protect her privacy, had traveled from the United States to Lviv, Ukraine, to volunteer as a medical worker.
>
> The woman reported to authorities that Burke, whom she recently met for the first time in Lviv, told her that he was working for Samaritan's Purse, a relief organization with an emergency field hospital in the city, and that he had close links with local police – claims which have subsequently been disproven. He was staying in a hotel in Lviv with a number of unidentified companions, though it remains unclear exactly what he was doing in Ukraine. He fled after the alleged assault and his whereabouts remain unknown.
>
> Because she was convinced that Burke had influence with the local police, the victim crossed the border to Poland to file charges, escorted by an American journalist to whom she turned for help. Polish and Ukrainian police have issued a warrant for Burke's arrest, and border security is on the lookout for him should he attempt to cross from Ukraine into Poland.
>
> Burke served with the Marine Corps' 4th Reconnaissance Battalion in San Antonio, Texas, according to his LinkedIn profile, and he has a tattoo on his left bicep depicting a Marine reconnaissance logo with a skull, wings, and a paddle. He has

---

[4] The Article incorrectly states "Ryan Michael Burke" when Burke's name is Michael Ryan Burke.

past affiliations with a nongovernmental organization named Concilium and has worked for the Department of State as a contractor.

The woman is currently in Poland receiving medical attention for injuries sustained during the attack. The U.S. Embassy in Poland has been informed of the incident and is providing assistance. A State Department official confirmed they were aware of reports of such a case but 'given privacy considerations [had] no details to confirm at this time.'

(Doc. #86-25).

On April 3, 2022, after learning about the Article, Burke contacted Recurrent denying the L.P.'s allegations. When Recurrent asked Burke whether he was claiming that the statements L.P. told the police was false, Burke stopped responding to them and decided to leave Ukraine. (Doc. #78-13).

Also on April 3, 2022, Milburn tweeted the following on social media: "Mozart Group in pursuit of Marine accused of rape in Ukraine," and, "The Mozart Group is tracking [Burke] down now through our network here in country. We believe that he is in Kyiv. If anyone knows who his companions might be, please IM me." (the "Tweets") (Doc. #78-16).

On April 4, 2022, Burke paid a Ukrainian taxi driver to avoid checkpoints and to take him somewhere Burke could walk across to Poland without being questioned by the authorities. (Doc. #78-5).

After entering into Poland, Burke contacted the U.S. Embassy in Poland, but they could not confirm whether or not there were open cases or warrants for his arrest. The FBI asked Burke to come into the Embassy and give a statement regarding these allegations, but instead, Burke left Poland without telling the FBI and without giving a statement. On April 6, 2022, Burke flew to Slovakia and traveled back to the United States on April 7, 2022. Burke prepared a written statement regarding the allegation on the plane back to the United States that was later submitted to the FBI by his counsel.

4

**LEGAL STANDARD**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden to establish that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, the court evaluates the evidence in the light most favorable to the nonmoving party and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991); White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

**ANALYSIS**

**A. Defendants' motion for summary judgment is granted on count 1.**

In count 1, Burke asserts a defamation claim against both Milburn and Recurrent based on the statements made in the Article and the Tweets. (Doc. #12). Milburn and Recurrent both argue that summary judgment should be granted on this count because the statements made are, at the very least, substantially true. (Docs. #78 & #81).

"In Missouri, the elements of defamation are: (1) publication, (2) of a defamatory statement, (3) which identifies the plaintiff, (4) that is false, (5) that is published with a requisite degree of fault, and (6) damages the plaintiff's reputation." Castle Rock Remodeling, LLC v.

Better Bus. Bureau of Greater St. Louis, Inc., 354 S.W.3d 234, 239 (Mo. Ct. App. 2011) (citations omitted).

In any defamation case, the truth is an absolute defense. McClanahan v. Anti-Defamation League, No. 23-05076-CV-SW-JAM, 2023 U.S. Dist. LEXIS 223495, at *11 (W.D. Mo. Dec. 15, 2023) (citing Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo. 1996)). "The test is whether the challenged statement is substantially true, it is not necessary that the precise facts disclosed be literally true." Id. Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. See Cockram v. Genesco, Inc., 680 F.3d 1046, 1051 (8th Cir. 2012). "A substantially true statement contains the same 'sting' as the truth, which means that the plaintiff's damage would have been the same irrespective of whether the defendant stated the truth or the substantial truth." McClanahan, 2023 U.S. Dist. LEXIS 223495, at *12 (internal citation omitted).

Here, Burke's amended complaint claims the following statements made in the Article are defamatory:

1. "A former U.S. Marine has been accused of raping and beating an American woman in Western Ukraine";

2. "[Burke], 38, is being sought by Ukrainian and Polish police after the woman reported the alleged assault to authorities";

3. "The woman reported to authorities that Burke, whom she recently met for the first time in Lviv, told her that he was working for Samaritan's Purse . . . and that he had close links with local police — claims which have subsequently been disproven . . . He fled after the alleged assault and his whereabouts remain unknown";

4. "[T]he victim crossed the border to Poland to file charges, escorted by an American journalist to whom she had turned for help. Polish and Ukrainian police have issued a warrant for Burke's arrest, and border security is on the lookout for him should he attempt to cross from Ukraine into Poland";

5. "Burke served with the Marine Corps' 4th Reconnaissance Battalion in San Antonio, Texas, according to his LinkedIn profile"; and

6. "The woman is currently in Poland receiving medical attention for injuries sustained during the attack. The U.S. Embassy in Poland has been informed of the incident and is providing assistance. A State Department official confirmed they were aware of reports of such a case but "given privacy considerations [had] no details to confirm at this time.""

(Doc. #12).

1. "A former U.S. Marine has been accused of raping and beating an American woman in Western Ukraine."

Regarding the first alleged defamatory statement in the Article, at his deposition, Burke concedes that L.P., an American woman, did in fact accuse him of raping and beating her. (Doc. #78-5 at 15). Furthermore, the fact that both the Polish and Ukrainian authorities were looking into the sexual allegations is further proof that Burke was accused by L.P. of raping and beating her. (Doc. #86-4). Therefore, the first statement is true and cannot support a defamation claim. McClanahan, 2023 U.S. Dist. LEXIS 223495, at 11.

2. "[Burke], 38, is being sought by Ukrainian and Polish police after the woman reported the alleged assault to authorities."

Regarding the second statement, Burke also concedes that Ukrainian police attempted to locate him at his hotel to question him about the rape allegations. (Doc. #89 at 7). The Ukrainian police also sought assistance from volunteers in locating Burke for questioning. (Doc. #86-19). Furthermore, the Polish Regional Prosecutor's Office opened a criminal investigation into the alleged assault, which infers that the Polish police was also seeking to investigate Burke. (Doc. #86-6). Therefore, the second statement is at least substantially true and cannot support a defamation claim.

3. "The woman reported to authorities that Burke, whom she recently met for the first time in Lviv, told her that he was working for Samaritan's Purse . . . and that he had close links with local police — claims which have subsequently been disproven . . . He fled after the alleged assault and his whereabouts remain unknown."

7

Case 2:22-cv-04147-BCW   Document 92   Filed 06/11/24   Page 7 of 12

While Burke argues that these statements are defamatory because he never told L.P. he was working for Samaritan's Purse or that he had close links to local police, the Article does not accuse Burke of making those statements. The Article states that L.P. "reported to the authorities" that Burke made those statements. (Doc. #86-25). Burke concedes that he told L.P. that he met up with Samaritan's Purse during their time together. (Doc. #86-1 at 31). Additionally, L.P. did report to the authorities that Burke told her that he had contacts with law enforcement. (Doc. #86-8). While the facts are slightly different from the statements made in the Article, the inaccuracies are immaterial as the allegedly defamatory charge is true in substance. Cockram 680 F.3d at 1051. Additionally, regarding the statement that Burke fled after the alleged assault, Burke admitted that after finding out about the alleged rape allegations he paid a taxi driver to help him leave Ukraine without being questioned by authorities. (Doc. #88 at 6). It is reasonable to consider this behavior to be "fleeing," and therefore is also substantially true.

Furthermore, even if the statements cannot be considered substantially true, there is no evidence that these statements damage Burke's reputation, which is an element of a defamation claim. Castle Rock Remodeling, LLC, 354 S.W.3d at 239. There is no evidence that anyone or any organization has looked at Burke differently or withheld opportunities from him because they thought he worked for a relief organization, had contacts with Ukrainian police, or fled Ukraine. Consequently, these statements cannot support a defamation claim because they are substantially true and even if they are not, Burke cannot prove his reputation was damaged because of these statements.

4. "[T]he victim crossed the border to Poland to file charges, escorted by an American journalist to whom she had turned for help. Polish and Ukrainian police have issued a warrant for Burke's arrest, and border security is on the lookout for him should he attempt to cross from Ukraine into Poland."

8

Burke admits that L.P. did travel to Poland to report allegations of sexual assault to the Polish police. (Doc. #88 at 3). The records show that while there is no evidence that charges have been filed or warrants for Burke's arrest have been issued, both Polish and Ukrainian police have been investigating these allegations and have been seeking to locate Burke for questioning. (Doc. #86-19). The Court finds that the "sting" of these statements made in the Article is the same irrespective of whether the police sought Burke because of charges filed with the police or because of allegations reported to the police. McClanahan, 2023 U.S. Dist. LEXIS 223495, at *12. L.P. did meet with police to accuse Burke of sexual assault and police did seek to locate Burke regarding the accusation. Therefore, the statements are substantially true and cannot support a defamation claim.

5. "Burke served with the Marine Corps' 4th Reconnaissance Battalion in San Antonio, Texas, according to his LinkedIn profile."

The Article states that Burke was stationed in Texas but Burke asserts that he was stationed in California. (Doc. #86-1). The distinction is immaterial and does not change the fact that Burke did serve with the U.S. Marines's Fourth Force Reconnaissance Battalion, which is the purpose of the statement. Therefore, the statement is substantially true and cannot support a defamation claim. Furthermore, even if the statement cannot be considered substantially true, there is no evidence that this statement damages Burke's reputation. Consequently, Burke is unable to prove every element of defamation based on this statement either.

6. "The woman is currently in Poland receiving medical attention for injuries sustained during the attack. The U.S. Embassy in Poland has been informed of the incident and is providing assistance. A State Department official confirmed they were aware of reports of such a case but "given privacy considerations [had] no details to confirm at this time."

Burke's sole argument against these statements is that the use of the word "attack" instead of "alleged attack" implies that an actual attack occurred, which he claims is false. (Doc. #88).

9

However, in other places in the Article it does refer to the situation as being "alleged" or "reported" by the woman ("[T]he woman reported the alleged assault to authorities.") (Doc. #86-25). The use of the word "attack" does not change the fact that L.P. did go to the hospital to receive medical treatment (Doc. #86-3 at 9) and the U.S. Embassy and State Department were aware of the allegations (Docs. #78-11; #86-18). Therefore, the statements are substantially true and cannot support a defamation claim.

      7.   <u>The Tweets Milburn posted do not support a defamation claim.</u>

Burke also alleges that Milburn's Tweets also were defamatory statements. (Doc. #12). While Burke did not argue they were in its suggestions in opposition to Defendants' motions for summary judgment, the Court addresses this argument to complete the record. Milburn's tweets state the following: "Mozart Group in pursuit of Marine accused of rape in Ukraine," and, "The Mozart Group is tracking [Burke] down now through our network here in country. We believe that he is in Kyiv. If anyone knows who his companions might be, please IM me." (Doc. #78-16). These statements are substantially true as Milburn was seeking to find Burke, who, as already established, was accused of rape in Ukraine. (Doc. #88-2 at 3-4). Therefore, the Tweets also cannot support a defamation claim.

Given the foregoing analysis, Defendants' motion for summary judgment is granted as to count 1.

**B. Milburn's motion for summary judgment is granted on count 2.**

Burke asserts an IIED claim against Milburn only alleging that Milburn put out orders to "mercenaries" to hunt Burke down as supported by the Tweets. (Doc. #12).

An IIED claim under Missouri law requires a plaintiff to establish that (1) the defendant's conduct was extreme and outrageous; (2) the Defendant acted intentionally or recklessly; and (3)

10

the defendant's conduct cause extreme emotional distress resulting in bodily harm. Kan. City Laser, Inc. v. MCI Telcoms. Corp., 252 F. App'x 100, 103 (8th Cir. 2007). Additionally, a plaintiff must prove that the defendant's sole intent in acting was to cause emotional distress. Id.

Here, Burke's accusation that Milburn hired mercenaries to "hunt" him down based on the Tweets posted is unsupported in the record. While the Tweets stated that Mozart was "in pursuit" and "tracking" Burke, Mozart is not a mercenary group but a humanitarian organization. (Doc. #88-2). In fact, at the time the Tweets were posted, Mozart only had two members in the organization. Additionally, merely searching for Burke is not extreme and outrageous conduct as it does not "go beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." May v. Greater Kan. City Dental Soc'y, 863 S.W.2d 941, 948 (Mo. Ct. App. 1993).

Furthermore, there is no evidence that searching for Burke, and posting tweets that Mozart was searching for Burke, was done with the sole intent to cause extreme emotional distress. Based on the evidence, a jury could not reasonably conclude that the sole intent to look for Burke and post online the search for Burke, who has been accused of rape, was only to cause Burke emotional distress. At the very least, a secondary intent could be reasonably inferred to be the desire to actually locate Burke, as the Ukrainian authorities already asked for volunteers to help locate him.

There are not many factual scenarios sufficient enough to support an IIED claim. Kan. City Laser, Inc., 252 F. App'x at 104. Here, the circumstances are do not meet this standard as the evidence does not support any extreme or outrageous conduct by Milburn, nor that Milburn's conduct was solely intended to cause Burke extreme emotional distress. Therefore, Milburn's motion for summary judgment is granted as to count 2.

**C. Milburn's motion for summary judgment is granted on count 3.**

Lastly, Milburn asserts a common law conspiracy to commit assault and battery claim against Milburn only based on Milburn's attempts to locate Burke.

"Missouri recognizes no separate cause of action for civil conspiracy." Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402, 1409 (8th Cir. 1989). Civil conspiracy extends liability for tort to defendants other than the actual wrongdoer who committed the tort. Id. It is the acts causing damage to plaintiff that give rise to liability for damages, not the conspiracy itself. (internal quotations omitted). Id. See also, Simpson v. Weeks, 570 F.2d 240, 242 (8th Cir. 1978).

Here, in order to maintain a civil conspiracy to commit assault and battery, Burke would first need to have alleged a cause of action of assault and battery against a defendant who allegedly committed the tort. Smith v. Brown & Williamson Tobacco Corp., Case No. 96-0459-CV-W-3, 1999 U.S. Dist. LEXIS 21990, at *31 (W.D. Mo. Jan. 29, 1999). Burke has not alleged a cause of action for assault and battery in the instant case and therefore the conspiracy claim cannot survive. Consequently, Milburn's motion for summary judgment is granted as to count 3. Accordingly, it is hereby

ORDERED Defendants' motions for summary judgment (Docs. #77 and #79) are GRANTED.

IT IS SO ORDERED.

DATED: June 11, 2024

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT